An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1229

Filed: 5 May 2015

STATE OF NORTH CAROLINA

v.

TIMOTHY DON GRAHAM

Cabarrus County

Nos. 13 CRS 50468, 2333

Appeal by defendant from judgment entered 18 December 2013 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Heard in the Court of Appeals 17 April 2015.

*Attorney General Roy Cooper, by Special Deputy Attorney General Neil Dalton, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for defendant-appellant.*

TYSON, Judge.

Timothy Don Graham ("Defendant") appeals from judgment entered after a jury convicted him of driving while impaired and driving while license revoked. We find no error in the convictions or the judgment entered thereon.

I. Background

Defendant was indicted for habitual impaired driving, driving while license revoked ("DWLR"), and habitual felon status.

The State's evidence tended to show the following: On the night of 17 March 2012, the Kannapolis Police Department established a driver's license and sobriety checkpoint between two crests on Lane Street, near the parking lot of the Lane Street Baptist Church. The church parking lot is accessible by two entrances. Officer Seth Killian ("Officer Killian") was stationed at the second entrance nearer to the checkpoint as the "chase car," apprehending drivers who attempted to avoid the checkpoint.

Just before midnight, Officer Killian observed a black sedan followed by a red pickup truck approaching on Lane Street from his left. Rather than continuing to the checkpoint, both vehicles turned into the church parking lot at the first entrance. Officer Killian "gave [the vehicles] a few seconds" to see if they would emerge from "around the other side of the church." He then drove "around the back side of the church" and "immediately saw both" vehicles parked at such a distance that they "didn't seem to have any relation" to each other. The black sedan was parked closer to Officer Killian, while the red truck was "pulled in nose first toward the very back corner" of the lot. Officer Killian saw that the truck's driver's side door was open, and "[D]efendant was standing just outside . . . approximately 3 to 5 feet away from the actual driver's seat" and "less than a foot" from the open door. Defendant then "walk[ed] pas[t] the hood of the car and on toward the back of the church." After instructing the sedan's two occupants to proceed through the checkpoint, Officer Killian "immediately drove to the red truck and . . . made contact with the defendant."

Officer Killian then observed a passenger, Barbara Hyatt ("Ms. Hyatt"), "sitting in the middle of the bench seat [of the] truck." He further noted that the truck was parked beside a retaining wall, so that the passenger side door "would have been really close to hitting the wall" if it had been opened.

As Officer Killian pulled his patrol car behind the truck and parked, Defendant walked back toward him. Officer Killian asked Defendant why he was "parked in the back of the parking lot[,]" and Defendant replied, "[m]y truck is having problems or is having engine problems." Defendant did not open the truck's hood, however, or examine the engine in any way.

Officer Killian observed no indicia of engine trouble but detected "a strong odor of alcoholic beverage" on Defendant's breath. Officer Killian asked Defendant how much he had to drink. Defendant initially claimed, "I haven't had anything to drink today." When Officer Killian inquired about the smell of alcohol on Defendant's breath, he replied, "[w]ell, I had one [beer] today and that's it." Officer Killian then asked for Defendant's driver's license. Defendant said that he did not have it with him, but gave his name and date of birth. Officer Killian consulted the computer in his patrol car and learned that Defendant's license was suspended. The red truck was registered to Defendant's brother.

Officer Killian asked Defendant if he would submit to a portable breath test ("PBT") for alcohol. Defendant agreed but then twice failed to provide a hard breath as instructed. Officer Killian requested assistance from Officer Tony Peeler ("Officer

Peeler"), who was working at the checkpoint. Officer Peeler performed two PBTs on Defendant, both of which detected alcohol. Between the two tests, Defendant told Officer Peeler that he was "at the church to meet somebody to do some type of construction, . . . checking on some type of construction job with the church." During the 35 minutes Officer Peeler was at the scene, no one arrived to meet with Defendant.

After administering three additional field sobriety tests, Officer Killian arrested Defendant for driving while impaired ("DWI"). A subsequent blood draw measured Defendant's blood alcohol level as .13 grams per 100 milliliters of blood.

Prior to jury selection, Defendant advised the trial court that he would stipulate to three prior convictions for impaired driving within the preceding ten years. *See* N.C. Gen. Stat. § 20-138.5(a) (2013). Defendant was tried before a jury for DWI and DWLR, and was found guilty of both offenses. He then pled guilty to having committed the felony of habitual impaired driving as an habitual felon. The trial court consolidated Defendant's two substantive offenses for judgment and sentenced him as an habitual felon to an active term of 76 to 104 months imprisonment. Defendant appealed to this Court.

## II. Issues

Defendant argues the trial court erred by denying his motion to dismiss at the conclusion of the evidence, because the State failed to prove that he was the driver of the red truck observed by Officer Killian. Defendant asserts he was never seen

driving the truck or sitting in the driver's seat, nor was he the truck's owner. Given Ms. Hyatt's presence and location inside the truck when Officer Killian arrived in the church parking lot, Defendant contends the State's proof "supported only suspicion or conjecture that [he] was driving [and] was not sufficient to take the case to the jury."

### III. Standard of Review

> When considering a motion to dismiss for insufficiency of the evidence, we consider whether, in the light most favorable to the State and with all reasonable inferences drawn in the State's favor, there is enough evidence of each essential element of the crime charged to persuade a rational juror that the defendant was the perpetrator.

*State v. Childress*, 367 N.C. 693, 694-95, 766 S.E.2d 328, 330 (2014). The State may prove that a defendant was driving a vehicle by circumstantial evidence. *See State v. Riddle*, 56 N.C. App. 701, 704, 289 S.E.2d 598, 599 (1982). Moreover, "[c]ircumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *Childress*, 367 N.C. at 696, 766 S.E.2d at 330 (alteration in original) (citation and internal quotation marks omitted). "A motion to dismiss should be granted, however, where the facts and circumstances warranted by the evidence do no more than raise a suspicion of guilt or conjecture" as to the defendant's identity as the perpetrator. *State v. Turnage*, 362 N.C. 491, 494, 666 S.E.2d 753, 755 (2008) (citation and internal quotation marks omitted).

IV. Analysis

A. Driving A Motor Vehicle

Driving a motor vehicle is an essential element of both DWI and DWLR. N.C. Gen. Stat. §§ 20-28, 20-138.1(a)(1) (2013). "[O]ne 'drives' within the meaning of G.S. 20-138.1 if he is in actual physical control of a vehicle . . . which has the engine running." *State v. Fields*, 77 N.C. App. 404, 406, 335 S.E.2d 69, 70 (1985).

Defendant likens his case to *State v. Ray*. 54 N.C. App. 473, 283 S.E.2d 823 (1981). In *Ray*, a police officer who responded to an accident call testified that he observed two parked cars that appeared to have been struck by a third car, which was occupied by the defendant "halfway in the front seat." *Id*. at 473, 475, 283 S.E.2d at 824-25. This Court held the officer's testimony, standing alone, was insufficient to support a jury finding that the defendant drove the vehicle for purposes of N.C. Gen. Stat. § 20-138(a):

> The only evidence presented by the State connecting the defendant with the automobile was the Public Safety Officer's testimony that he observed the defendant "halfway [sic] the front seat." This circumstantial evidence alone is insufficient to support a conclusion that the defendant was the driver. *The State offered no evidence that the car had been operated recently or that it was in motion at the time the officer observed the defendant.* Nor did the State offer evidence that the motor was running with the defendant sitting under the steering wheel at the time the officer came upon the scene . . . . It is possible that other circumstantial evidence – such as testimony that the defendant was seen driving the car at some point immediately prior to the accident or evidence as to the ownership of the automobile – in addition to the testimony

> of the officer would have bolstered the State's case. However, no other such evidence was presented.

*Id.* at 474-75, 283 S.E.2d at 825 (citation omitted) (emphasis supplied).

The circumstantial evidence of Defendant's identity as the driver of the red truck is significantly stronger than the limited proffer in *Ray*. In this case, there is no question that someone drove the red truck down Lane Street into the church parking lot, as observed by Officer Killian moments prior to his encounter with Defendant. *Id.* at 475, 283 S.E.2d at 825 ("The State offered no evidence that the car had been operated recently[.]"). Inasmuch as Officer Killian waited just "a few seconds" before proceeding into the lot, Defendant's location at the open driver's side door is strong evidence that Defendant exited the truck through the door. The fact that the driver of the truck took action consistent with an attempt to avoid the sobriety checkpoint, paired with the fact of Defendant's intoxication, tend to support the conclusion that Defendant was driving. Defendant's reference to the vehicle as "my truck" likewise has some tendency to show an exercise of dominion and control indicating his status as the driver. *Cf. State v. Glaze*, 24 N.C. App. 60, 64, 210 S.E.2d 124, 127 (1974) ("The driver of a borrowed car, like the owner of the car, has the power to control the contents of the car.").

Defendant's false and contradictory statements to the responding officers also constitute circumstantial evidence "tending to show consciousness of guilt." *State v. Walker*, 332 N.C. 520, 537, 422 S.E.2d 716, 726 (1992); *see also Riddle*, 56 N.C. App.

at 705, 289 S.E.2d at 600 (noting "discrepancies within defendant's statements and between defendant's statements and the physical evidence").

Defendant told Officer Killian the truck was parked in the church parking lot because of engine trouble. He told Officer Peeler that he had come to the church, at midnight, to inquire about construction work. Defendant also initially denied having consumed any alcohol and then insisted that he had just one beer. These are conflicting claims, which were both belied by his blood alcohol level. Defendant gave, at best, a misleading response when asked for his driver's license.

## V. Conclusion

We hold that the State's evidence, though circumstantial, was sufficient to support a reasonable inference that Defendant was driving the red truck when it was observed by Officer Killian. *See Riddle*, 56 N.C. App. at 704-05, 289 S.E.2d at 600; *State v. Dula*, 77 N.C. App. 473, 474-75, 335 S.E.2d 203, 204 (1985).

Although the State did not eliminate the possibility that Ms. Hyatt was the driver, or "prove to a scientific certainty that defendant was the driver of the car[,]" the State was not required to do so in order to submit the charges to the jury. *Dula*, 77 N.C. App. at 475, 335 S.E.2d at 204. Ms. Hyatt was not sitting in the driver's seat when she was observed by Officer Killian. Other than her presence in the truck, no additional evidence suggests she had been driving.

Defendant received a fair trial, free from prejudicial errors he preserved, presented, and argued.

NO ERROR.

Judges BRYANT and DIETZ concur.

Report per Rule 30(e).